**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**TED WILEY**                                                                 **PLAINTIFF**

**v.**                          **CASE NO. 4:12-cv-00226-KGB**

**ROCKTENN CP, LLC**                                               **DEFENDANT**
_____

**ROCKTENN CP, LLC**                                        **COUNTER-PLAINTIFF**

**v.**

**TED WILEY**                                                  **COUNTER-DEFENDANT**

## OPINION AND ORDER

Plaintiff Ted Wiley brings this action against defendant RockTenn CP, LLC ("RockTenn") alleging two causes of action against RockTenn. Mr. Wiley alleges infringement of U.S. Patent No. 7,328,833 and alleges breach of contract based on a license agreement that the parties executed on April 1, 2006. RockTenn has counterclaimed for declaratory judgment and for attorney's fees and costs pursuant to 35 U.S.C. § 285.

Before the Court is RockTenn's motion for summary judgment (Dkt. No. 51). RockTenn asks the Court to grant it summary judgment on Mr. Wiley's alleged infringement claim and find that it either (1) has not breached the license agreement or (2) that Mr. Wiley is only owed $9,613.87 for a partial breach of the license agreement. Mr. Wiley has responded (Dkt. No. 63). Mr. Wiley contends that RockTenn has admitted to a breach of the license agreement but maintains the amount of damages due as a result of the breach is in dispute. Mr. Wiley also contends that RockTenn infringed upon his patent by selling his product after April 1, 2012.

RockTenn has replied (Dkt. No. 66).   For the reasons that follow, RockTenn's motion for summary judgment is granted in part and denied in part (Dkt. No. 51).

## I.   Factual Background

Mr. Wiley is the inventor and owner of U.S. Patent No. 7,328,833 ("the '833 patent"), which issued on February 12, 2008 (Dkt. Nos. 18-2, 43-1, 52-3).   The '833 patent issued from U.S. Patent Application No. 10/857,077 ("the '077 application"), which Mr. Wiley filed on May 28, 2004.   The '833 patent discloses and claims a "heavy-duty, knock-down container" that can be stored flat and quickly erected from a folded state (Dkt. No. 52, ¶ 6).   Each claim of the '833 patent is limited to a container "formed from a pair of substantially identical complementary blanks" (*Id.*, ¶ 6; '833 patent, at 8:31-32, 9:12-14[1]).

RockTenn, which is headquartered in Norcross, Georgia, is one of North America's leading producers of corrugated and consumer packaging products (Dkt. No. 52-1).   The products designed and manufactured by RockTenn include large corrugated bulk bins that can hold up to 2,000 pounds of product (Dkt. No. 52-2).   RockTenn manufactures and sells bulk bins under its AutoBin® trademark.

### A.   License Agreement

In 2006, Mr. Wiley and the Smurfit-Stone Container Enterprises, Inc. ("Smurfit") negotiated the terms of a license agreement and entered into a written "Exclusive License Agreement" on April 1, 2006 (Dkt. Nos. 18-1, 52-4).   RockTenn acquired Smurfit after the execution of the license agreement and is the successor-in-interest to Smurfit (Dkt. No. 23, ¶ 13).   Under the terms of the license agreement, Mr. Wiley granted to Smurfit the exclusive rights to

---

[1]   For convenience and clarity, the Court will cite the patent as "the '833 patent," and not by docket number.   The Court cites the '833 patent by column and line number, where 9:12-14 refers to column 9, lines 12-14.

manufacture and sell bulk bins of the type described in the '077 application, which issued as the '833 patent (Dkt. No. 18-1, ¶ 1).  Smurfit agreed to pay Mr. Wiley a royalty of 1.25 percent of net sales (total invoice less shipping, taxes, rebates, and returns) of the licensed bulk bins (*Id.*, ¶ 2).

The license agreement provides that it would continue in effect for a period of six years and that it would automatically renew for two additional terms of six years each, "unless either party provides notice to the other of their intention not to renew not less than 180 days prior to the expiration of the current term" (Dkt. No. 18-1, ¶ 3).  The license agreement further provides that, if Smurfit fails to render statements or to make payments of royalties as required by the agreement, Mr. Wiley may on 30 days written notice terminate the license agreement (*Id.*).  The license agreement provides that it shall be terminated 30 days from the date of delivery of the notice of default to Smurfit / RockTenn if the default is not cured within the 30 days (*Id.*).

On October 26, 2011, Mr. Wiley sent to RockTenn a letter stating, "This letter is notification of my cancellation of the AutoBin contract, effectively April 1, 2012.  All manufacture and shipping of AutoBins must cease on this date" (Dkt. No. 52-5).  Mr. Wiley agrees that his termination letter did not mention default or any failure of performance by RockTenn and that he sent the letter less than 180 days before the expiration of the initial term of the agreement on March 31, 2012 (*See* Dkt. No. 52, ¶¶ 21-22 *and* Dkt. No. 65, ¶ 3; *see also* Dkt. No. 52-6, at 69, 166).

Mr. Wiley, in his response to RockTenn's statement of facts, disputes RockTenn's assertion that he testified that his termination letter of October 26, 2011, did not comply with and was not effective under the terms of the license agreement (Dkt. No. 52, ¶¶ 24-25; Dkt. No. 65, ¶ 3-4).  At his deposition, Mr. Wiley was asked, "But you would agree with me that your

termination in [the letter of October 26, 2011] doesn't abide by the terms of the license?"  Mr. Wiley responded, "It looks that way."  (Dkt. No. 52-6, at 71).  Mr. Wiley was then asked, "[S]o you agree with me that your termination that you sent in [the letter of October 26, 2011] wasn't effective under the terms of the contract, correct?"  Mr. Wiley responded, "Yes."  (*Id*.).  However, Mr. Wiley also testified that he suspected that RockTenn agreed that the license agreement had been canceled because RockTenn had ceased paying him royalties (Dkt. No. 52-6, at 70).

### B.      RockTenn's AutoBin® Products and Alleged Infringement

RockTenn manufactures and sells bulk bin containers under its AutoBin® trademark. One type of container sold under the AutoBin® trademark is a container formed from a single-blank (the "One-Piece Bin") (Dkt. No. 52-7).   Another type of container sold under the AutoBin® trademark is a container manufactured in Sioux City, Iowa, that is formed from two blanks of different shapes (the "Sioux City Bin") (Dkt. Nos. 52-8, 52-9).  Over the course of the license agreement with Mr. Wiley, RockTenn manufactured and sold under the AutoBin® trademark a bulk bin formed from a pair of substantially identical complementary blanks ("the Wiley Bin"), which is of the type claimed in the '833 patent and covered by the parties' license agreement (Dkt. No. 52-10).

Mr. Wiley in his complaint claims that RockTenn has continued since the termination of the license agreement to make and sell self-erecting, six-sided pallet containers under the brand name AutoBin® that embody the invention of the '833 patent.  Mr. Wiley's amended complaint accuses all containers "offered for sale and sold under the brand name AutoBin®" of patent infringement (Dkt. No. 18, ¶¶ 27, 30).  Later, in subsequent briefing, Mr. Wiley states that his "patent infringement claim rests exclusively on whether any of Wiley's patented AutoBins (the

'833 patent) were sold by defendant RockTenn after April 1, 2012, the date upon which an Exclusive Licensing Agreement expired" (Dkt. No. 44).   The parties then submitted a joint pleading stating that Mr. Wiley's patent infringement claims "are limited to RockTenn's one-piece product" (Dkt. No. 46, ¶ 3).   However, the parties later indicated to the Court that Mr. Wiley claimed at his deposition that one of RockTenn's products infringes upon the '833 patent (Dkt. No. 55; Dkt. No. 52, ¶ 34).

Mr. Wiley stated in his deposition and in response to RockTenn's requests for admission that he does not accuse RockTenn's One-Piece Bin of infringing the '833 patent (Dkt. No. 52-6, at 24, Dkt. No. 52-11, Resp. to Reqs. Nos. 1-4, 21).   Mr. Wiley's testimony indicates that he only claims that the Sioux City Bin infringes the '833 patent and not any other product of RockTenn's (Dkt. No. 52-6, at 90-91, 144).   Therefore, Mr. Wiley's patent infringement claims are based on all sales of the Sioux City Bins and on sales of the Wiley Bins after the purported termination of the license agreement (*Id*.; *see* Dkt. No. 52, ¶ 35 *and* Dkt. No. 65, ¶ 6).

As to the Sioux City Bin, Mr. Wiley testified that he agreed that every one of the claims of his '833 patent includes the limitation that the container be formed from a pair of substantially identical complimentary blanks, meaning that the box has to be made from a pair of blanks that are substantially identical (Dkt. No. 52-6, at 99-100).   In addition, Mr. Wiley agreed that the two blanks from which the Sioux City Bin is formed are not substantially identical (*Id*. at 100).   However, Mr. Wiley also testified that whether the Sioux City Bin is made from two identical blanks is not determinative on the issue of infringement because the '833 patent "says

substantially identical, or substantially the same, which is not the same thing as identical." (Dkt. No. 52-6, at 98).[2]

As to alleged sales of the Wiley Bins after the purported termination of the license agreement, Mr. Wiley in his complaint claims that he has discovered that RockTenn "has entered into nationwide contracts with companies such as Conagra, and others, to whom the licensed product has been sold and for which [Mr. Wiley] has received no royalty." (Dkt. No. 18, ¶ 23). Mr. Wiley admitted in response to RockTenn's requests for admission that he has "no documentary evidence that RockTenn has 'entered into nationwide contracts with ConAgra, and others' for the sale of a two-piece AutoBin® container," but stated that he had verbal evidence he was attempting to verify at the time (Dkt. No. 52-11, Resp. to Req. No. 23). Mr. Wiley testified that his information regarding manufacture and sales in violation of the agreement comprises reports from others in the industry (Dkt. No. 52, ¶ 38). Some of the information on which Mr. Wiley bases his claims of manufacture and sales in violation of the agreement was given to him by his "agent," who purportedly heard it from others (Dkt. No. 52, ¶ 39). In his discovery responses, Mr. Wiley describes some of the information on which he bases his claims of manufacture and sales in violation of the agreement as "hearsay" (Dkt. No. 52, ¶ 40).

### C. RockTenn's Purported Attempts to Cure

Over the course of the agreement, RockTenn has paid Mr. Wiley over $49,000.00 in royalties on its sales of Wiley Bins (Dkt. No. 52, ¶ 41). RockTenn describes what it characterizes as under-payment and over-payment to Mr. Wiley on different occasions during the

---

[2] The Court acknowledges that, on this point, Mr. Wiley also argues that he stated that the Sioux City Bin had "all the angles and the weight and the shape is identical to mine." (Dkt. No. 64, at 5 (citing Dkt. No. 52-6, at 101)). However, based on the Court's review of the record before it, that reference was to the One-Piece Bin, which contradicts his other testimony that the one-piece product does not infringe the '833 patent.

six-year initial term of the agreement and states the "net effect of those accounting errors to be $9,613.87 owed to Mr. Wiley" (Dkt. No. 52, ¶¶ 42-43).  Mr. Wiley considers this an admission by RockTenn that it breached the licensing agreement in the amount of $9,613.87 (Dkt. No. 65, ¶¶ 12-13).  To date, Mr. Wiley has refused RockTenn's offers to, as RockTenn describes it, "remedy the accounting error" (Dkt. No. 52, ¶¶ 44-45).

On July 24, 2013, RockTenn served Mr. Wiley with an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure in the amount of $12,500.00 (Dkt. No. 52, ¶ 46).  Mr. Wiley refused RockTenn's offer of judgment (Dkt. No. 52, ¶ 47).

## II.    Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).  "The evidence of the non-movant is to be believed,

and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986).

### III.     Analysis

#### A.     Alleged Infringement

> An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device.

*Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999).

"Patent infringement occurs when a device (or composition or method), that is literally

covered by the claims or is equivalent to the claimed subject matter, is made, used, or sold,

without the authorization of the patent holder, during the term of the patent." *Multiform*

*Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1476 (Fed. Cir. 1998); *see* 35 U.S.C. § 271.

"Victory in an infringement suit requires a finding that the patent claim covers the alleged

infringer's product or process, which in turn necessitates a determination of what the words in

the claim mean." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 374 (1996) (internal

quotations omitted).   Construction of a patent, including terms of art within its claim, is

exclusively within the province of the court. *Id.* at 372.

#### 1.     Claim Construction

The parties filed a joint claim chart (Dkt. No. 39).  They fully briefed issues related to

claim construction (Dkt. Nos. 42, 43, 44, 45).  In addition, they jointly requested that this Court

cancel a scheduled hearing on claim construction issues, which this Court did (Dkt. No. 46).

This Court now addresses claim construction issues related to this dispute.

Claim terms need only be construed "to the extent necessary to resolve the controversy."

*Vivid Technologies, Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *see*

*Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011) *cert. denied*, 132 S. Ct. 1541 (U.S. 2012).  *Markman* does not require a district court to follow any particular procedure in conducting claim construction.  *Ballard Med. Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001).  "If the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties."  *Id.*  "As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best."  *Id.*  The Federal Circuit has summarized the cannons of claim interpretation as follows:

> Claims are construed by the court as they would be understood by persons of skill in the field of the invention, for patents are written by and for skilled artisans. When the meaning or scope of a patent claim is in dispute the court construes the claim as a matter of law.  The construction of a patent claim starts with the claim itself, read in light of the specification.  The prosecution history is often helpful in understanding the intended meaning as well as the scope of technical terms, and to establish whether any aspect thereof was restricted for purposes of patentability

*Vivid Technologies, Inc.*, 200 F.3d at 804 (internal citations omitted).

Applying these principles, this Court determines that it need not construe the '833 patent to resolve any alleged issues related to RockTenn's sales of the One-Piece Bin.  Mr. Wiley stated in his deposition and in response to RockTenn's requests for admission that he does not accuse RockTenn's One-Piece Bin of infringing the '833 patent (Dkt. No. 52-6, at 24, Dkt. No. 52-11, Resp. to Reqs. Nos. 1-4, 21).  Mr. Wiley's testimony indicates that he only claims that the Sioux City Bin infringes the '833 patent and that the Wiley Bin is of the type claimed in the '833 patent (Dkt. No. 52-6, at 90-91, 144).

Based on these admissions, the Court will not resolve whether the '833 patent should be construed to cover containers formed from only "two wholly separate and identically shaped" pieces or whether it is broad enough to be construed to include also containers formed from "two

9

symmetrical halves of the same sheet of material" (Dkt. No. 39, at 3).  Although the parties focused on this dispute when briefing the claim construction issues, the Court determines it need not construe those claim terms or resolve that issue to resolve the controversy before the Court.

Further, based on Mr. Wiley's admissions, to the extent he asserted such claims in his Amended Complaint, this Court grants summary judgment to RockTenn on any claim that the One-Piece Bin infringes the '833 patent.  Mr. Wiley's remaining patent infringement claims are based on all sales of the Sioux City Bins and sales of the Wiley Bins after the purported termination of the license agreement (*Id.*; *see* Dkt. No. 52, ¶ 35 *and* Dkt. No. 65, ¶ 6).

## 2.    Claimed Infringement

"Summary judgment on the issue of infringement [or noninfringement] is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents."  *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353-54 (Fed. Cir. 1998)); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004) (citing *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001)).  In other words, "[s]ummary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) (citing *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed. Cir. 1998)).

The parties do not dispute that, at a minimum, the '833 patent should be construed to cover containers formed from "two wholly separate and identically shaped" pieces (Dkt. No. 39, at 3).  The Court construes the claim in this way.  Having done so, the Court determines on the

record before it that RockTenn is entitled to summary judgment on the issue of infringement as to the Sioux City Bin.

The parties do not dispute that, as to the Sioux City Bin, Mr. Wiley testified that he agreed that every one of the claims of his '833 patent includes the limitation that the container be formed from a pair of substantially identical complimentary blanks, meaning that the box has to be made from a pair of blanks that are substantially identical (Dkt. No. 52-6, at 99-100).   In addition, Mr. Wiley agreed that the two blanks from which the Sioux City Bin is formed are not substantially identical (*Id.* at 100).   The Court acknowledges that Mr. Wiley also testified that whether the Sioux City Bin is made from two identical blanks is not determinative on the issue of infringement because the '833 patent "says substantially identical, or substantially the same, which is not the same thing as identical."  (Dkt. No. 52-6, at 98).  The Court rejects Mr. Wiley's argument.

Based on the Court's construction of the claim, Mr. Wiley's undisputed testimony regarding the '833 patent and the Sioux City Bin, the record as to '833 patent, Fig. 5 (Dkt. No. 53, at 6), and the record as to the Sioux City Bin (Dkt. No. 53, at 10), this Court determines that only one conclusion as to infringement could be reached by a reasonable jury under a literal infringement claim, direct infringement claim, indirect infringement claim, or under the doctrine of equivalents.  The Court grants RockTenn summary judgment on Mr. Wiley's infringement claim as to the Sioux City Bin.

The Court agrees that, as to Mr. Wiley's claim that alleges infringement by inducement pursuant to 35 U.S.C. § 271(b), because the Court concludes RockTenn is entitled to summary judgment on Mr. Wiley's claims of direct infringement as to the One-Piece Bin and the Sioux City Bin, RockTenn is entitled to summary judgment as to any claim of inducement of

infringement as to the One-Piece Bin and the Sioux City Bin.  *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986).

The Court now turns to the sales of the Wiley Bins after the purported termination of the license agreement.  The parties admit that the Wiley Bins sold by RockTenn were formed from a pair of substantially identical complementary blanks, which is of the type claimed in the '833 patent and covered by the license agreement (Dkt. No. 52, ¶ 29; Dkt. No. 65, ¶ 5).  Based on this, if RockTenn sold Wiley Bins after the purported termination of the license agreement, RockTenn may be liable for infringing the '833 patent.  If RockTenn sold Wiley Bins during the term of the license agreement but failed to remit the appropriate payment to Mr. Wiley under the license agreement, it may have breached the terms of the license agreement.  To resolve these issues, the Court must examine the contract issues related to the parties' license agreement.

B.      **Alleged Breach of Contract**

In his Amended Complaint, Mr. Wiley alleges that RockTenn materially breached the parties' license agreement by not paying royalties within 30 days after the end of each calendar month during the term of the agreement, materially breached the license agreement by failing to pay Mr. Wiley royalties on all licensed products sold by it as is evidenced by the failure of RockTenn to pay royalties to Mr. Wiley on the net sales from each and every contract entered into by Smurfit to sell the licensed product, and that Mr. Wiley has discovered that RockTenn has entered into nationwide contracts with companies such as Conagra and others to whom the licensed product has been sold and for which Mr. Wiley has received no royalty (Dkt. No. 18, ¶¶ 21-22).  RockTenn argues in its motion for summary judgment that Mr. Wiley cannot succeed on his breach of contract claim as a matter of law because he wrongfully terminated the license agreement by failing to follow the contract's notice-and-cure provision and the 180-day

provision.  RockTenn also contends that, even if the license agreement was terminated, Mr.

Wiley cannot succeed on his breach of contract claim because he has insufficient evidence of

damages.  The Court will consider each argument in turn.

### 1.     Notice-and-Cure Provision and Wrongful Termination

RockTenn attempts to excuse its breach of the license agreement by claiming that, as a

matter of law, Mr. Wiley cannot succeed on his breach of contract claim.  RockTenn argues that

Mr. Wiley wrongfully terminated the contract by failing to give notice of the alleged breach to

RockTenn with the opportunity to cure as called for by the license agreement and because he

gave his intent not to renew the license agreement less than the required 180 days prior to the

expiration of the initial term.  Mr. Wiley argues that he was not required to give notice of default,

citing the contractual language that gave him the sole discretion to terminate the agreement upon

30 days written notice.

> With regard to the notice-and-cure provision, the contract provides:

> If Smurfit fails to render statements or to make payments of royalties as required
> by this agreement, Wiley, in his sole and absolute discretion may on 30 days
> written notice to Smurfit terminate this license agreement and the license granted
> hereunder.  If such default is not cured within such 30 days period this agreement
> shall be terminated 30 days from the date of delivery of the notice to Smurfit and
> such termination shall have no effect on the obligation of Smurfit to pay any and
> all royalties due.

(Dkt. No. 18-1, at 2 ¶ 3).

The parties agree that Arkansas law applies to govern the license agreement.  Thus, this

Court "must attempt to predict what [the Arkansas Supreme Court] would decide if it were to

address the issue."  *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011).  As the

Eighth Circuit has observed, to do so, the Court must "apply three well-established principles of

contract law."  *Smith v. Arrington Oil & Gas, Inc.*, 664 F.3d 1208, 1212 (8th Cir. 2012)(quoting

*First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 832 S.W.2d 816, 819 (1992)).   "[T]he primary rule in the construction of instruments is that the court must, if possible, ascertain and give effect to the intention of the parties."   *Smith*, 664 F.3d at 1212 (quoting *Harris v. Stephens Prod. Co.*, 310 Ark. 67, 832 S.W.2d 837, 840 (1992)).   "Arkansas law requires courts to 'look to the contract as a whole and the circumstances surrounding its execution to determine the intention of the parties.'"   *Smith*, 664 F.3d at 1212 (quoting *Griffin*, 832 S.W.2d at 820).   "Second, in construing any contract, Arkansas courts 'must consider the sense and meaning of the words used by the parties as they are taken and understood in their plan, ordinary meaning."   *Smith*, 664 F.3d at 1212 (quoting *Griffin*, 832 S.W.2d at 819 (internal quotations omitted)).   "Third, 'different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible.'"   *Smith*, 664 F.3d at 1212 (quoting *Griffin*, 832 S.W.2d at 819 (internal quotations omitted)).   "A construction that neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions."   *Smith*, 664 F.3d at 1212 (quoting *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681, 686 (2004)).

Focusing on the language that gives Mr. Wiley the discretion to terminate the license agreement, he argues that he was not required to give notice and the opportunity to cure.   The Court does not agree.   Mr. Wiley's reading of the contract would require the Court to ignore the second sentence of the notice-and-cure paragraph.   The sentence giving Mr. Wiley the discretion to terminate the contract in the event of failure to render statements or to make royalty payments is clearly tied to the second sentence in this paragraph, which elaborates that this notice is effective upon the failure to cure "such default" within 30 days after the written notice of termination.   The Court finds that this provision contemplates that the notice of termination in

the event of default will also include notice of the default itself.   Mr. Wiley admits in his deposition testimony that his termination letter of October 26, 2011, failed to comply with the requirement of giving notice and an opportunity to cure.

He also admits in his deposition testimony that he failed to comply with the requirement of giving written notice of termination or non-renewal 180 days before the expiration of the term of the license agreement.   The license agreement provides for automatic renewal, "unless either party provides notice to the other of their intention not to renew not less than 180 days prior to the expiration of the current term" (Dkt. No. 18-1, ¶ 3).

Mr. Wiley's failure to comply with these requirements constitutes a breach of contract. "When performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach."  *Spann v. Lovett & Co., Ltd.*, 2012 Ark. App. 107, 21, 389 S.W.3d 77, 93.

Under Arkansas law, several affirmative measures might excuse Mr. Wiley's breach.  For example, under some circumstances, substantial performance excuses breach.  A court in this district has examined whether, under Arkansas law, a party substantially performs its obligations under a contract when it provides oral notice of termination of a contract that by its terms includes a requirement that the terminating party provide written notice and an opportunity to cure.  *G & K Services, Co. v. Bill's Super Foods, Inc.*, 2009 WL 2982971, at *5-6 (E.D. Ark., Sept. 15, 2009).  The court rejected the theory, determining that "[t]o hold otherwise and allow oral notification to suffice as 'substantial performance' with the written notice requirement would render that provision a nullity.'"  *Id*. at *6.  This Court agrees and, therefore, rejects any theory of substantial performance on the part of Mr. Wiley.

Further, a material breach by one party to a bilateral contract might discharge the other party's duty of performance and thereby excuse breach.  Mr. Wiley argues that RockTenn had

already breached the license agreement by failing to pay him royalties by the time he allegedly failed to provide notice and an opportunity to cure and failed to give notice within 180 days of the expiration of the first term of the license agreement.  RockTenn has admitted underpayment during the period of the license agreement in the amount of $9,613.87.   If RockTenn's underpayment constitutes a material breach, then Mr. Wiley may have been excused from further performance under the contract, including the contractual requirements governing termination and non-renewal of the contract.  *See TXO Prod. Corp. v. Page Farms, Inc.*, 287 Ark. 304, 307, 698 S.W.2d 791, 793 (1985) ("If the plaintiff's breach is material and sufficiently serious, the defendant's obligation to perform may be discharged.") (citing Restatement (First) of Contracts, § 397 (1932)).   However, if the breach was not material, the remedy is damages for partial breach.  *Id.* ("Corbin states the basic rule: 'If one party to a bilateral contract commits a partial breach of his duty, one that is not so material as to discharge the other party's duty of performance, the latter's only remedy is damages for the partial breach.'") (quoting Corbin, Contracts, § 1253 (1962)).

The Court determines that, based on the record before it and construing all facts in the light most favorable to Mr. Wiley, there is a disputed issue of fact as to whether RockTenn's breach of the license agreement by failing to pay the correct amount of royalties owed was material and, therefore, excuses Mr. Wiley's breach of the license agreement's provisions.  *See TXO Production Corp.*, 698 S.W.2d at 793 ("If one party to a bilateral contract commits a partial breach of his duty, one that is not so material as to discharge the other party's duty of performance, the latter's only remedy is damages for the partial breach.")

Regardless if Mr. Wiley breached the license agreement, RockTenn may have waived the ability to insist on compliance with the license agreement's notice terms.   "The principle is

elemental that one party to a contract who, with knowledge of a breach by the other party, continues to accept benefits under the contract, and suffers the other party to continue in performance thereof, waives the right to insist on the breach." *Clear Creek Oil & Gas Co. v. Brunk*, 160 Ark. 574, 255 S.W. 7, 8 (1923).  RockTenn argues, on the one hand, that Mr. Wiley wrongfully terminated the license agreement but, on the other hand, argues that the agreement was not terminated.   Mr. Wiley argues that, if he breached the license agreement with his October 2011 termination letter, RockTenn waived the breach and the right to insist on strict compliance with the contractual requirements of notice-and-cure and 180 days' notice of termination before expiration of the agreement's term.  Mr. Wiley sent his termination letter to RockTenn in October 2011, claiming he wanted the license agreement terminated as of April 1, 2012.  Mr. Wiley testified at his deposition that he assumed that RockTenn treated the license agreement as canceled, states in his briefing that all parties have operated under the assumption that the license agreement terminated on April 1, 2012, and confirms in his pre-trial disclosures that he will contest at trial the effect of RockTenn's inaction after receiving his letter of notification (Dkt. No. 52-6, at 70-71; Dkt. No. 64, at 6; Dkt. No. 71, at 5).  RockTenn submitted documentation under seal indicating that royalties were paid to Mr. Wiley under the terms of the license agreement through February 2012 at least, seeming to indicate that RockTenn continued to operate under the terms of the license agreement well after October 2011 (Dkt. No 54).  The Court determines that, based on the record before it and construing all facts in the light most favorable to Mr. Wiley, there is a disputed issue of fact as to whether RockTenn waived the ability to insist on compliance with the license agreement's notice terms.

Further, this Court observes that, based on the record before it and construing all inferences in favor of Mr. Wiley, there appear to be disputed issues of fact regarding cancellation

of the license agreement.   *See* Arkansas Model Jury Instruction—Civil 2430 (2013). Specifically, Mr. Wiley testified at his deposition that he assumed that RockTenn treated the license agreement as canceled and states in his briefing that all parties have operated under the assumption that the license agreement terminated on April 1, 2012.   The documentation RockTenn submitted under seal seems to indicate no royalties were paid to Mr. Wiley under the terms of the license agreement after February 2012 (Dkt. No 54).

The Court rejects the argument that Mr. Wiley's failure to give the proper notice rendered his termination of the license agreement by law ineffective.   The case cited by RockTenn—*Purnell v. Atkinson*, 248 Ark. 401, 451 S.W.2d 734, 736 (1970)—only stands for the proposition that, to be effective, "notice of termination must be clear, unambiguous and unequivocal."   *Id*. at 406, 451 S.W.2d at 736.   While Mr. Wiley's notice of termination of the license agreement may have been improper under the express terms of the contract, it may well have been clear, unambiguous, and unequivocal.   The law cited by RockTenn does not suggest that a wrongful termination is by law always an ineffective termination.[3]

Based on this analysis, the Court determines there are disputed issues of fact remaining for trial as to Mr. Wiley's claim for breach of the license agreement.

### 2.   Alleged Damages

RockTenn has admitted breach in underpayment to Mr. Wiley throughout the license period.   It next argues that Mr. Wiley has no evidence that his damages, if any, exceed $10,000.00.   RockTenn has made an offer of judgment of $12,500.00, which Mr. Wiley rejected.

---

[3] RockTenn cites *Matrix Group Limited, Inc. v. Rawlings Sporting Goods Company*, 477 F.3d 583, 589 (8th Cir. 2007), for the proposition that the Eighth Circuit affirmed a district court's grant of summary judgment of wrongful termination against a licensor when the licensor failed to comply with the license agreement's 30 day notice and cure provision.   *Matrix* does not control the outcome here because the Eighth Circuit analyzed the contract under Delaware, not Arkansas, law and the contract terms differ.

For purposes of determining Mr. Wiley's damages, the Court first considers the nature of the damages, if any, Mr. Wiley can claim.  Based on the Court's analysis, for the period the parties deem the license agreement in effect, Mr. Wiley may be entitled to damages for partial breach of the license agreement.  In other words, he may be entitled to the royalties owed to him under the license agreement.  The Court then considers the period after the parties deemed the license agreement terminated, if in fact they did so.  Whether Mr. Wiley is entitled to damages for that period depends upon whether RockTenn sold any Wiley Bins during that period.  If so, and if the license agreement was no longer in effect, RockTenn appears to have infringed the '833 patent and may be liable to Mr. Wiley.

RockTenn asserts that "Mr. Wiley has no documentary evidence, and can identify only 'verbal evidence,' to substantiate his claims that RockTenn has entered into nationwide contracts without paying royalties on those sales."  (Dkt. No. 52, ¶ 37).  RockTenn also contends that "Mr. Wiley says that his information regarding manufacture and sales in violation of the Agreement comprises reports from others in the industry," "some of the information on which Mr. Wiley bases his claims of manufacture and sales in violation of the Agreement was given to him by his 'agent,' who purportedly heard it from others," and "[i]n his discovery responses, Mr. Wiley describes some of the information on which he bases his claims of manufacture and sales in violation of the Agreement as 'hearsay.'"  (Dkt. No. 52, ¶¶ 38, 39, 40).

It is well settled that a party may not defeat a motion for summary judgment by relying solely on inadmissible hearsay.  *See, e.g.*, *BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 900 (8th Cir. 2013); *Guest v. Shell*, 2013 WL 1089039 (E.D. Ark. Mar. 14, 2013).  However, the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form.  *Gannon*

*Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012).   Rule 56 of the Federal Rules of Civil Procedure permits a party to object to evidence cited by the other party at the summary judgment stage and requires the Court to make a determination regarding whether the evidence could be presented at trial in an admissible form.   *See* Fed. R. Civ. P. 56(c)(2).

To the extent RockTenn lodges an objection to such evidence being relied upon at the summary judgment stage, the Court determines that such evidence *could* be presented at trial in an admissible form through third-party witness testimony.   Mr. Wiley has disclosed three witnesses, other than himself, whom he will call to testify at the trial of this case—Dave Fritz, Tammy Jenks, and Robert Coe (Dkt. No. 71, at 7).   According to Mr. Wiley's discovery responses and deposition testimony, Ms. Jenks and Mr. Coe will testify as to their respective companies' purchase and use of Wiley Bins, for which Mr. Wiley contends he was never compensated (Dkt. No. 52-12, at 3; Dkt. No. 52-6, at 33-36, 105-06, 125-30).

For these reasons, the Court determines that, construing the facts in the light most favorable to Mr. Wiley, there remain disputed issues of material fact as to whether RockTenn failed to remit proper payment to Mr. Wiley during the term of the license agreement, whether RockTenn continued to sell the Wiley Bin after the termination of the license agreement, and whether RockTenn infringed the '833 patent by selling the Wiley Bin after the termination of the license agreement.   Because these disputed issues of material fact remain, the Court denies summary judgment to RockTenn.

\*       \*       \*

For the foregoing reasons, RockTenn's motion for summary judgment is granted in part and denied in part (Dkt. No. 51).  The Court grants summary judgment to RockTenn on any claim that the One-Piece Bin or Sioux City Bin infringes the '833 patent.  Mr. Wiley's claims for infringement as to the One-Piece Bin and the Sioux City Bin are dismissed with prejudice.  RockTenn's motion for summary judgment is denied in all other respects.  The Court also notes that RockTenn's counterclaims remain pending.  The parties will proceed to trial on the remaining claims.

SO ORDERED this the 9th day of October, 2013.

Kristine G. Baker
United States District Judge