IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

TED WILEY                                                                                                    PLAINTIFF

v.                                         Case No. 4:12-cv-00226-KGB

ROCKTENN CP, LLC                                                                              DEFENDANT

## ORDER

Before the Court is the motion for attorneys' fees filed by defendant RockTenn CP, LLC ("RockTenn") (Dkt. No. 88). RockTenn seeks fees pursuant to Section 285 of the Patent Act, 35 U.S.C. § 285, and sanctions pursuant to 28 U.S.C. § 1927. Plaintiff Ted Wiley has responded (Dkt. Nos. 93, 94), and RockTenn has replied (Dkt. No. 97). In addition, RockTenn has filed a notice of supplemental authority (Dkt. No. 98) and a notice of change in relevant authority (Dkt. No. 100), and Mr. Wiley has responded to both (Dkt. Nos. 99, 101). The Court denies RockTenn's motion.

   **I.   Factual Background**

Mr. Wiley is the inventor and owner of U.S. Patent No. 7,328,833 ("the '833 patent"), which discloses and claims a "heavy-duty, knock-down container" that can be stored flat and quickly erected from a folded state. Each claim of the '833 patent is limited to a container "formed from a pair of substantially identical complementary blanks" ('833 patent, at 8:31-32, 9:12-14). RockTenn is a producer of corrugated and consumer packaging products, including large corrugated bulk bins. RockTenn manufactures and sells bulk bins under its AutoBin® trademark. On April 1, 2006, Mr. Wiley and Smurfit-Stone Container Enterprises, Inc. ("Smurfit") negotiated the terms of a license agreement and entered into a written "Exclusive License Agreement." Under the terms of the license agreement, Mr. Wiley granted to Smurfit

the exclusive rights to manufacture and sell bulk bins of the type described in Mr. Wiley's U.S. Patent Application No. 10/857,077 ("the '077 application"), which issued as the '833 patent. RockTenn acquired Smurfit after the execution of the license agreement and is the successor-in-interest to Smurfit.

One type of container RockTenn sells under the AutoBin® trademark is a container formed from a single blank (the "One-Piece Bin"). Another type of container sold under the AutoBin® trademark is a container manufactured in Sioux City, Iowa, that is formed from two blanks of different shapes (the "Sioux City Bin"). Over the course of the license agreement with Mr. Wiley, RockTenn manufactured and sold under the AutoBin® trademark a bulk bin formed from a pair of substantially identical complementary blanks ("the Wiley Bin"), which is of the type claimed in the '833 patent and covered by the parties' license agreement. On October 26, 2011, Mr. Wiley sent to RockTenn a letter purporting to terminate the agreement effective April 1, 2012.

On April 16, 2012, Mr. Wiley filed his original complaint asserting a claim for breach of contract for unpaid royalties; a claim for patent infringement for post-termination production and sales of "the licensed product"; and a claim for declaratory judgment for the invalidity of two of RockTenn's patents, U.S. Patent Numbers 7,381,176 ("the '176 patent") and 7,682,300 ("the '300 patent) (Dkt. No. 1). After RockTenn moved to dismiss, Mr. Wiley filed his first amended complaint on June 25, 2012 (Dkt. No. 18). In his first amended complaint, Mr. Wiley clarified his factual allegations to allege that Smurfit and RockTenn marked and sold "the licensed product under the brand name AutoBin®" (*Id.*, ¶ 14). He specifically referred to the statement on RockTenn's website that it "offers a line of bulk bins 'including the patented AutoBin® . . . ." (*Id.*, ¶ 18). Mr. Wiley reasserted his claim for breach of contract, and in both complaints, he

alleged that he had discovered that RockTenn "had entered into nationwide contracts with companies such as Conagra, and others, to whom the licensed product has been sold and for which Plaintiff has received no royalty" (Dkt. No. 1, ¶ 20; Dkt. No. 18, ¶ 23). Mr. Wiley also clarified his patent infringement claim to allege infringement for RockTenn's making, using, and selling of "six-sided, self-erecting pallet containers, including those offered and sold under the brand name AutoBin®" (Dkt. No. 18, ¶ ¶ 27, 30). Mr. Wiley's first amended complaint dropped his claim for declaratory judgment of invalidity of RockTenn's patents. RockTenn counterclaimed for non-infringement and invalidity of the '833 patent (Dkt. No. 23).

Mr. Wiley's claims of patent infringement have been unclear in this litigation. From the record before the Court, it appears that Mr. Wiley originally intended the reference in his first amended complaint to RockTenn's boxes sold under the AutoBin® brand name to refer to Wiley Bins. Mr. Wiley stated in his deposition that he called his box the AutoBin and was not aware prior to this litigation that RockTenn sold other products under the AutoBin® trademark. However, at different points in this litigation, Mr. Wiley has also asserted infringement claims directed at RockTenn's One-Piece and Sioux City Bins.

The sealed documents submitted to the Court show that RockTenn's counsel, Scott Eidson, informed Mr. Wiley's counsel, William Stanley, in May 2012 that RockTenn had moved to a new design, the One-Piece Bin, shortly after the license expired. Mr. Eidson insisted that the One-Piece Bin did not infringe Mr. Wiley's patent. In response, Mr. Stanley stated in correspondence in July and October 2012 that Mr. Wiley had information that RockTenn's Sioux City, Iowa, plant and others had sold Mr. Wiley's bins to national accounts and that Mr. Wiley had not been paid royalties he was owed for such sales. Further, Mr. Stanley explained that RockTenn's website implied that RockTenn still sold Mr. Wiley's bins. Mr. Stanley indicated

that he felt that this information was sufficient to warrant discovery into which bins RockTenn sold to which customers during the license period and after.

Mr. Wiley then asserted infringement against the One-Piece Bin during claim construction in February and March 2013, although his position went back and forth on this issue. In his initial claim construction brief, Mr. Wiley proposed a construction of the '833 patent that would support a claim of infringement against the One-Piece Bin (Dkt. No. 42, at 13). However, in response to RockTenn's claim construction briefing, Mr. Wiley stated that his "patent infringement claim rests exclusively on whether any of Wiley's patented AutoBins (the '833 patent) were sold by defendant RockTenn after April 1, 2012, the date upon which an Exclusive Licensing Agreement expired" (Dkt. No. 44). Then, in a joint pleading submitted to cancel the claim construction hearing, the parties stated that Mr. Wiley's patent infringement claims "are limited to RockTenn's one-piece product" (Dkt. No. 46, ¶ 3).

The parties later indicated in an August 29, 2013, joint status report to the Court that Mr. Wiley claimed at his deposition that a different product of RockTenn's—the Sioux City Bin—infringes the '833 patent (Dkt. No. 55; Dkt. No. 52, ¶ 34). In his deposition and in response to RockTenn's requests for admission, Mr. Wiley admitted that the One-Piece Bin did not infringe. The case then proceeded to the summary judgment stage with Mr. Wiley's patent infringement claims based on post-termination sales of Wiley Bins and for all sales of Sioux City Bins, in addition to his contract claim based on unpaid royalties for sales of Wiley Bins.

The Court granted RockTenn's motion for summary judgment as to the Sioux City Bin, noting that Mr. Wiley agreed in his deposition that every one of the claims of the '833 patent included the limitation that the container be formed from a pair of substantially identical complementary blanks and that the two blanks from which the Sioux City Bin is formed are not

substantially identical. The Court denied RockTenn's motion for summary judgment on Mr. Wiley's breach of contract claim and patent infringement claim for post-termination sales of Wiley Bins, based in part on finding a disputed issue of fact as to whether RockTenn sold any Wiley Bins after the termination of the license agreement. The parties resolved the remaining claims through a joint stipulation of dismissal and a motion for consent judgment (Dkt. Nos. 83, 84).

RockTenn now asks that the Court award it fees in the amount of $165,737.85 and asks that the Court require Mr. Wiley and Mr. Stanley to reimburse those fees. RockTenn's motion originally requested $123,574.35, but revised this number in its reply to include amounts incurred in preparing the instant motion. RockTenn represents that this amount includes fees for work relevant to the patent infringement allegations, not unrelated work, and that fees related to both the breach of contract claim and the patent claim were halved.

## II. Patent Act 35 U.S.C. § 285

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An award of attorney fees under § 285 is governed by Federal Circuit law. *See* 28 U.S.C. § 1295(a)(1); *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 182 F.3d 1356, 1359 (Fed. Cir. 1999). The Court must first determine whether the prevailing party has proven that the case is exceptional. If the district court finds that the case is exceptional, it must then determine whether an award of attorney fees is justified. *Id.* at 1309 (citing *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998)). "[T]he decision whether or not to award fees is still committed to the discretion of the trial judge, and '[e]ven an exceptional case does not require in all circumstances the award of attorney fees.'" *Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 543 (Fed. Cir.

1990) (quoting *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986)); *see also Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *9 (N.D. Cal. Aug. 12, 2014) (applying the two-step inquiry post-*Octane Fitness*).

While RockTenn's motion was pending, the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755-56 (2014), rejected the Federal Circuit's legal test for determining whether a case is exceptional under § 285. Under the previous standard articulated by the Federal Circuit in *Brooks Furniture Manufacturing, Inc. v. Dutailier, International, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), a case was deemed "exceptional" only if a district court found either litigation-related misconduct of an independently sanctionable magnitude or that the litigation was both "brought in subjective bad faith" and "objectively baseless." *Id.* at 1381. In *Octane Fitness*, the Supreme Court rejected the *Brooks Furniture* standard as unduly rigid and an encumbrance to the statutory grant of discretion to district courts under § 285. 134 S. Ct. at 1755.

Giving "exceptional" its ordinary meaning, the Court held that an "exceptional" case is "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. The Supreme Court instructed that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*[1] "As in the comparable context of the Copyright Act, '[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised 'in light of the

---

[1] In a companion case, the Supreme Court clarified that the exceptionality determination is a matter of discretion and, therefore, is to be reviewed only for an abuse of discretion on appeal. *Highmark, Inc. v. Allcare Health Mgmt. Sys.*, 134 S.Ct. 1744, 1748 (2014).

6

considerations we have identified.'" *Id.* at 1756 (internal quotation marks omitted) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). The Court suggested district courts look to the "nonexclusive" list of factors it previously set forth concerning similar provisions of the Copyright Act, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (quoting *Fogerty*, 510 U.S. at 534 n.19). Under the new standard, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1756-57. Further, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.

The Supreme Court in *Octane Fitness* also rejected the Federal Circuit's requirement that a party establish exceptionality by clear and convincing evidence. *Octane Fitness*, 134 S. Ct. at 1758. Rather, entitlement to fees under § 285 is governed by a preponderance of the evidence standard. *Id.*

RockTenn first argues that this case is exceptional because Mr. Wiley and Mr. Stanley asserted objectively unreasonable claims of infringement against RockTenn's One-Piece and Sioux City Bins. The Federal Circuit has stated that, "to be objectively baseless, the patentee's assertions—whether manifested in its infringement allegations or its claim construction positions—must be such that no reasonable litigant could reasonably expect success on the merits." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013) (internal quotation marks omitted); *see CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-CV-6635-LHK, 2014 WL 2508386, at *9 (N.D. Cal. June 3, 2014). Because the '833 patent claims a container

formed from a pair of substantially identical complementary blanks, RockTenn argues that any claims against its One-Piece Bin, which is formed from a single blank, or its Sioux City Bin, which is formed from two blanks of different shapes, are objectively unreasonable.

Assuming *arguendo* that claims against the One-Piece and Sioux City Bins are objectively unreasonable, the difficulty here is the lack of clarity as to when Mr. Wiley did and did not assert that those products infringe the '833 patent. Although Mr. Wiley's amended complaint alleged infringement against all RockTenn products manufactured and sold under the AutoBin® brand name, Mr. Wiley did not mention the One-Piece Bin or the Sioux City Bin in either of his complaints. Mr. Wiley contends in his response to RockTenn's motion for attorneys' fees that the amended complaint was directed only at sales of the patented Wiley Bin. In so far as Mr. Wiley proceeded on a theory of post-terminations sales of the Wiley Bin, bringing and maintain this lawsuit was not exceptional.

Of course, Mr. Wiley eventually asserted infringement against both the One-Piece and Sioux City Bins. The first time the record shows Mr. Wiley asserting infringement claims against the One-Piece Bin was during the claim construction process, beginning in February 2013. Mr. Wiley's position changed during claim construction, but by August 2013, he had admitted the One-Piece Bin did not infringe and changed his focus to the Sioux City Bin. Accordingly, based on the record before the Court, the Court can only say that Mr. Wiley maintained claims against the One-Piece Bin and the Sioux City Bin for a matter of months as to each bin.

RockTenn takes issue with Mr. Wiley's lack of an adequate pre-filing investigation, based on his admissions that he did not prepare a claim chart, perform preliminary claim construction, or consult a patent expert prior to filing suit. Again, it appears that Mr. Wiley

originally brought his suit focusing his claims on sales of Wiley Bins, relying in part on the mistaken belief that the reference on RockTenn's website to "patented AutoBins®" referred to Wiley Bins. The record does not clearly state what claim comparison or consultation Mr. Wiley or his counsel performed before attempting to assert claims against the One-Piece Bin and the Sioux City Bin.

RockTenn also argues that this case is exceptional because Mr. Wiley never had any evidence of post-termination sales. At the summary judgment stage, Mr. Wiley admitted he had no documentary evidence of post-termination sales but contended that two of his disclosed trial witnesses—Robert Cole[2] and Tammy Jenks—would testify as to their respective companies' purchase and use of Wiley Bins, for which Mr. Wiley contends he was never compensated. Based on this, the Court found an issue of fact for trial as to post-termination sales. RockTenn now argues that it spoke with both Mr. Cole and Ms. Jenks prior to trial and that neither of them was planning to testify at trial or had any knowledge of sales of the Wiley Bins after March 31, 2012. RockTenn has presented the affidavit of its counsel, Mark Thomas, representing that he and Mr. Eidson spoke with both Mr. Cole and Ms. Jenks by telephone on October 8, 2013, the day after Mr. Wiley listed Mr. Cole and Ms. Jenks as trial witnesses in his pretrial disclosures. Mr. Thomas's affidavit states, among other things, that that neither Mr. Cole nor Ms. Jenks knew they were on Mr. Wiley's witness list, Mr. Cole said he had not used or purchased Wiley Bins more recently than five to six years ago, and Ms. Jenks said that she had not used a Wiley Bin more recently than 10 years ago. There is no indication that Mr. Cole or Ms. Jenks were under oath when they made these representations to RockTenn's counsel. The Court also is uncertain as to the business relationship, if any, of Mr. Cole or Ms. Jenks and RockTenn. Despite this,

---

[2] Based on Mr. Wiley's deposition testimony, the Court's prior Opinion and Order referred to Robert "Coe" rather than Robert "Cole." The parties' filings, however, use "Cole."

RockTenn contends that Mr. Wiley's contrary representations to the Court regarding Mr. Cole and Ms. Jenks warrant a finding of bad faith.

Mr. Wiley responds that he had spoken with Mr. Cole and both he and his counsel attempted to contact Ms. Jenks but states that "all attempts were being rebuffed by Ms. Jenks and Mr. Cole indicated that he would not testify on Wiley's behalf." (Dkt. No. 93, at 13). Mr. Wiley's response does not fully address the inconsistences between Mr. Wiley's prior representations to this Court and RockTenn's allegations regarding its counsels' conversations with Mr. Cole and Ms. Jenks. Nonetheless, this Court cannot say based on the record before it that Mr. Wiley or Mr. Stanley made intentional misrepresentations regarding Mr. Cole and Ms. Jenks.

Having considered the controlling legal standard, and having reviewed the filings of the parties in this case, including but not limited to those filings made under seal related to RockTenn's request for fees, the Court cannot conclude for the reasons set forth below that this case is an exceptional case that warrants attorney fees under § 285. Even if this case were an exceptional case, for the reasons set forth below, this Court would exercise its discretion and decline to award fees.

### III. 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Although this case involves a patent claim, RockTenn's request for sanctions under § 1927 is governed by Eighth Circuit law, not Federal Circuit law. *See Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1141 (Fed.

Cir. 2005) ("This court reviews a district court's denial of a motion for sanctions under 28 U.S.C. § 1927 pursuant to the law of the regional circuit.")

According to the Eighth Circuit, sanctions are permitted under § 1927 when an attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Tenkku v. Normany Bank,* 348 F.3d 737,743 (8th Cir. 2003) (quoting *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990)). "The imposition of sanctions is a serious matter and should be approached with circumspection." *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999) (quoting *O'Connell v. Champion Int'l Corp.*, 812 F.2d 383, 395 (8th Cir. 1999)). "Because section 1927 is penal in nature, it should be strictly construed so that it does not 'dampen the legitimate zeal of an attorney in representing his client.'" *Id.* (quoting *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416 (5th Cir. 1994)). "As a result, losing arguments are not always sanctionable ones." *Books Are Fun, Ltd. v. Rosebrough*, 239 F.R.D. 532, 543 (S.D. Iowa 2007); *see McGlothlin v. Cequent Performance Products, Inc.*, No. 1:11CV00055 JLH, 2013 WL 5707801, at *2 (E.D. Ark. Oct. 18, 2013). In imposing sanctions under § 1927, the district court must make findings and provide an adequate explanation to ensure the sanctions address excess costs resulting from the misconduct, provide the sanctioned party an adequate opportunity to respond, and facilitate meaningful appellate review. *Lee*, 177 F.3d at 718.

RockTenn relies on the same arguments above in support of its claim for fees under § 1927, claiming that Mr. Stanley's failure to conduct a pre-filing investigation and insistence on pushing meritless claims vexatiously multiplied the proceedings in this case. For the reasons discussed below, the Court cannot conclude based on the record before it that Mr. Stanley unreasonably and vexatiously multiplied the proceedings in this case or that his conduct

11

manifests either intentional or reckless disregard of his duties to the Court. The Court denies RockTenn's request for sanctions pursuant to § 1927.

**IV.    Analysis**

As an initial matter, the Court is not convinced that Mr. Wiley's claims against the One-Piece Bin and the Sioux City Bin were objectively unreasonable. Mr. Wiley advanced a claim construction that would encompass the One-Piece Bin based on language in the '833 patent abstract and specification stating that the invention could be formed either from two identical, complementary blanks or from a unitary blank comprising similar complementary halves (Dkt. No. 42, at 13; *see* '833 patent, at 3:59-61, 6:5-13). RockTenn argued that Mr. Wiley was barred from asserting such an interpretation based on prosecution disclaimer, and Mr. Wiley eventually admitted that the One-Piece Bin did not infringe the '833 patent.

As to the Sioux City Bin, although it is formed from blanks of different shapes, Mr. Wiley argues in response to RockTenn's motion for fees that the figures from RockTenn's '176 and '300 patents depicting the Sioux City Bin in various states of configuration look substantially similar to the figures in Mr. Wiley's '833 patent. That Mr. Wiley did not succeed on any claim against the Sioux City Bin at the summary judgment stage does not necessarily mean that a claim against the Sioux City Bin is objectively unreasonable.

RockTenn contends in its filings that Mr. Wiley never responded to RockTenn's repeated requests for formal discovery responses clarifying the nature of Mr. Wiley's patent claims. However, during the discovery period, RockTenn never filed a motion to compel in this case. More importantly, this case was never focused solely on RockTenn's One-Piece and Sioux City Bins. Rather, the parties' filings address for only a few months, respectively, claims related to those products.

Mr. Wiley originally brought this case focusing on sales of Wiley Bins, both during and after the license period.  Mr. Wiley's infringement claim for post-termination sales mirrored his contract claim on this issue, and Mr. Wiley sought to learn at the beginning of the case of RockTenn's sales of all bins under the AutoBin® trademark.  Given the nature of these claims, and the common evidence that one would seek to support these claims, in evaluating whether this case is exceptional for purposes of § 285 and whether Mr. Stanley vexatiously and unreasonably multiplied the proceedings in this case, the Court considers Mr. Wiley and Mr. Stanley's conduct on all claims in this case, not just the patent claims directed at RockTenn's One-Piece and Sioux City Bins.

Mr. Wiley requested all of RockTenn's sales information early on in this case, stating in correspondence to RockTenn's counsel that RockTenn had been less than forthcoming about which boxes it sold to which customers.  Considering all the claims together, it is significant that RockTenn's in-house counsel admitted either before or at the time Mr. Wiley filed suit that it underpaid Mr. Wiley $9,613.87, which constitutes an admitted breach of the license agreement.

Further, RockTenn repeatedly contends that Mr. Wiley never had evidence of underpayments under the license agreement over the admitted breach amount of $9,613.87 or evidence of post-termination sales of the Wiley Bins.  The Court notes that here, and at the summary judgment stage, RockTenn has focused its arguments on the purported lack of Mr. Wiley's evidence, without presenting affirmative evidence of its own to explain its conduct—nothing even like a simple affidavit from a company representative was presented to assert that no post-termination sales of Wiley Bins were made.  RockTenn made no effort to explain to the Court its admitted underpayments of royalties on sales of Wiley Bins other than submitting a spreadsheet and referring to the admitted underpayment as an accounting error.  Although

RockTenn contends that Mr. Wiley never had evidence of damages in excess of $9,613.87, RockTenn made an offer of judgment for $12,500 in this case.

As to the representations regarding conversations with Mr. Cole and Ms. Jenks, Mr. Wiley stated in his deposition that it was his agent that spoke with Mr. Cole about sales of Wiley Bins (Dkt. No. 52-6, at 34-35). Further, there is no indication Mr. Cole or Ms. Jenks were under oath when they made representations to RockTenn's counsel, and the Court is uncertain as to the business relationship, if any, of Mr. Cole or Ms. Jenks and RockTenn. Those factors may tend to color memories and shade representations made by potential witnesses.

RockTenn also states in its briefing that Mr. Wiley made numerous settlement demands in excess of six figures. The Court locates no exhibits in the record before it supporting this contention. Rather, the only correspondence in the record on Mr. Wiley's settlement demands shows that he offered to settle the case for $20,000.00 at the end of September 2013 and for the $9,613.87 admitted underpayment at the end of October 2013.

Exhibits in the record support that RockTenn threatened to seek fees from the beginning of this litigation. Exhibits in the record also support Mr. Wiley's contention that RockTenn attempted to use the threat of fees to persuade Mr. Wiley to abandon all of his claims—including those claims based on RockTenn's admitted breach of the license agreement. When Mr. Wiley offered at the end of September 2013 to settle the case for $20,000.00, RockTenn's counsel wrote in a letter dated October 2, 2013, that RockTenn was declining the offer to settle but may be willing to reconsider its claim for attorneys' fees if Mr. Wiley was willing to dismiss immediately all of his claims with prejudice and grant RockTenn a general release. The day after the Court entered its Opinion and Order on summary judgment, RockTenn's counsel indicated it would drop its fee claim if Mr. Wiley were interested in "a walk-away." For these

reasons, considering the totality of the circumstances, the Court determines this is not an exceptional case. Even if this were an exceptional case, the Court would exercise its discretion to decline to award fees, and the record does not support a finding that any lawyer's conduct merits sanctions.

*   *   *

For the foregoing reasons, RockTenn's motion for attorneys' fees is denied (Dkt. No. 88).

SO ORDERED this the 30th day of September, 2014.

*/s/ Kristine G. Baker*
Kristine G. Baker
United States District Judge